## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENN-CHING LUO,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 14-6354** |
| | : | |
| **OWEN J. ROBERTS SCHOOL DISTRICT,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **JENN-CHING LUO,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-1098** |
| | : | |
| **OWEN J. ROBERTS SCHOOL DISTRICT,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **JENN-CHING LUO,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-5000** |
| | : | |
| **OWEN J. ROBERTS SCHOOL DISTRICT,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**TUCKER, J.**                                                 **March <u>18th</u>, 2022**

Presently before the Court are multiple Motions to Dismiss Plaintiff Jenn-Ching Luo's overlapping claims under: Civil Action No. 14-6354[1]; Civil Action No. 21-1098[2]; and Civil Action No. 21-5000.[3] Plaintiff Jenn-Ching Luo resides in Chester County, PA and sends his child ("Student") to school in their local school district, Owen J. Roberts School District ("School District"). Student has special needs: an intellectual disability and autism, and Owen J. Roberts School District provides him with special education.

Plaintiff's claims arise from the School Districts' Individual Education Plan ("IEP") evaluations and hearings, and a bus aide necessity hearing. He believes his due process rights were violated because his: (1) opinions and input were not properly valued; and (2) requests for School District-sponsored residential placement at an education facility and an individual bus aide were not met, even though School District demonstrated that appropriate specialized educational accommodations were provided without meeting those two specific requests.

In their respective briefs, the Defendants argue that Mr. Luo puts forth no evidence to support his arguments. This Court agrees. Accordingly, Defendants' Motions to Dismiss (Civil Action No. 14-6354 (ECF Nos. 87, 88, 91, 95)), (Civil Action No. 21-1098 (ECF Nos. 5, 11, 17)), (Civil Action No. 21-5000 (ECF Nos. 7, 11, 14)) are granted, and all of Plaintiff's claims, under all three dockets, are dismissed with prejudice.

---

[1]     Defendant James Gerl's Motion to Dismiss (ECF No. 87), Defendants Sharon W. Montanye and Sweet Stevens Katz & Williams LLP's Motion to Dismiss (ECF No. 88), Defendant Keri Kolbay's Motion to Dismiss Amended Complaint (ECF No. 91), Defendants Geoffrey Ball and Owen J. Roberts School District's Motion to Dismiss (ECF No. 95), Plaintiff Jenn-Ching Luo's Responses in Opposition to the Motions to Dismiss (ECF Nos. 89, 92, 93, 94, 96), and Defendants Sharon W. Montanye and Sweet Stevens Katz & Williams LLP's Reply to Plaintiff's Response (ECF No. 90).
[2]     Defendants Sharon W. Montanye and Sweet Stevens Katz & Williams LLP's Motion to Dismiss (ECF No. 5), ), Defendant Owen J. Roberts School District's Motion to Dismiss (ECF No. 11), ), Defendant Pennsylvania Department of Education's Motion to Dismiss (ECF No. 17), and Plaintiff Jenn-Ching Luo's Responses in Opposition to the Motions to Dismiss (ECF Nos. 18, 19, 20).
[3]     Defendant Pennsylvania Department of Education's Motion to Dismiss and Reply Brief (ECF Nos. 7, 15), Defendants Dan O'Brien and Owen J. Roberts School District's Motion to Dismiss (ECF No. 11), Defendant Michael J. McElligott's Motion to Dismiss (ECF No. 14), and Plaintiff's Responses in Opposition (ECF Nos. 12, 13, 16, 18).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Luo is a serial filer of largely unsuccessful cases in which he proceeds *in forma pauperis* and demands that the Court compel the School District to follow his directions and administer his child's education in the way he sees fit, including paying for residential private education, regardless of whether Individuals with Disabilities Education Act (IDEA) and Free Appropriate Public Education under § 504 (FAPE) requirements are being met. Nearly every time Mr. Luo is met with a binding decision he does not like, he files a new complaint under a new docket—he has filed eight civil actions (14-6354, 15-2952, 15-4248, 16-6568, 17-1508, 19-095, 21-1098, 21-5000) here in the Eastern District of Pennsylvania, after litigating the same issue in a similar manner in the Eastern District of New York and the Second Circuit Court of Appeals.[4]

### A.  Facts Specific to Civil Action No. 14-6354

Plaintiff's claims have been well litigated, with over seven years of proceedings and binding decisions. The following factual recap provides helpful background information and is further detailed in the Report and Recommendation prepared by the Honorable Carol Sandra Moore Wells (Civil Action No. 14-6354, ECF No. 35). That Report and Recommendation was approved and adopted by the Honorable Thomas N. O'Neill, Jr.

---

[4]      Mr. Luo's New York filings against the Baldwin Union Free School District follow the same pattern of multiple dockets with multiple unsuccessful filings from 2010-2017. *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 10-CV-1985 (JS)(AKT), 2011 U.S. Dist. LEXIS 26835 (E.D.N.Y. Mar. 15, 2011), *Luo v. Baldwin Union Free Sch. Dist.*, No. 10-CV-1985 (JS)(AKT), 2012 U.S. Dist. LEXIS 29884 (E.D.N.Y. Mar. 5, 2012), *Luo v. Baldwin Union Free Sch. Dist.*, 556 F. App'x 1 (2d Cir. 2013), *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 12-CV-3073(JS)(AKT), 2013 U.S. Dist. LEXIS 39570 (E.D.N.Y. Mar. 21, 2013), to name a few.

      *i.     Plaintiff's issues with Student's IEP and bus aide hearings*

Student receives special education at an Approved Private School ("APS") at the expense of the School District. Amended Compl., ¶ 13. At a November 21, 2013 IEP meeting, Luo requested and received a residential placement for Student. Accordingly, following a February 28, 2014 IEP meeting, Student's IEP was revised to include residential placement for the following school year. *Id.*, ¶¶ 20, 24-25. On June 26, 2014, Luo and Defendant Geoffrey Ball, the supervisor of special education for the School District, met at Ball's request; Luo signed a consent form permitting a reevaluation of Student and an IEP invitation notice. *Id.*, ¶¶ 31, 34, 35. Luo was informed at the meeting that Student would not be placed in a residential program and that the District never planned to place him in one, despite the previous IEP revision. *Id.*, ¶¶ 36, 42. The District advised Luo that it did not have sufficient information to consider a residential placement; hence, the request for reevaluation. *Id.*, ¶ 44. Luo disagreed with Ball's statements. *Id.*, ¶ 48.

On June 27, 2014, Luo received a revised IEP that included a demand that Luo undergo "parent training." *Id.*, ¶ 52. He also received a Notice of Recommended Educational Placement ("NOREP") implementing the revised IEP. *Id.*, ¶ 56. Luo requested that the demand for "parent training" be removed from the revised IEP, but Ball refused. *Id.*, ¶ 55.

On August 27, 2014, an administrative due process hearing was held before Hearing Officer Skidmore ("HO Skidmore)". *Id.*, ¶ 59. The issues addressed included the District's refusal to place Student in a residential program and the addition of a parent training requirement to the IEP. *Id.*, ¶ 60. Following the hearing, on September 15, 2014, HO Skidmore issued a decision that, *inter alia*, ordered an Independent Educational Evaluation ("IEE") of Student. *Id.*, ¶ 73. Subsequently, the District issued a request to observe Student, both at school and home, as

part of the IEE, but Luo refused to give consent, thus, Student was not observed in either setting. *Id.*, ¶¶ 108, 110. On September 29, 2014, Luo advised the District that he objected to its performance of an IEE and would appeal the Hearing Officer's Decision. *Id.*, ¶ 82. Nonetheless, the District retained Defendant Keri Kolbay, an employee of the Chester County Intermediate Unit,[5] to perform the IEE. Without Luo's consent, the School District released Student's records to Kolbay in order to complete the evaluation. *Id.*, ¶¶ 86, 89, 90. Kolbay reviewed the child's file and prepared an IEE report. *Id.*, ¶ 93. On November 5, 2014, Luo initiated a lawsuit which included an appeal of the Hearing Officer's Decision. *Id.*, ¶ 83.

On December 4, 2014, Ball invited Luo to participate in a December 15, 2014 IEP meeting. *Id.*, ¶ 97. Although Luo advised that he was unable to attend on that date, the District refused to reschedule, stating that it was "compelled to hold this meeting at the proposed date and time to review the report issued by the Independent Evaluator and implement any recommendations which may come from this report." *Id.*, ¶¶ 101, 102. Ball, with the approval of Defendant Sharon Montayne, Esq., counsel for the School District, proceeded with the December 15, 2014 meeting without Luo. *Id.*, ¶ 106. Following the meeting, Ball, joined by Montayne, forwarded a NOREP to Luo, indicating that the IEP, revised based on the IEE report, included a provision which required Luo to participate in District-supervised training. *Id.*, ¶¶ 109, 111, 112.

Luo also claims that the School District failed to give him proper notice of the termination of a personal bus aide for Student. Compl. at ¶ 41. Luo filed a due process complaint with the School District about the bus aide termination, after which Defendant Ball temporarily

---

[5] The Chester County Intermediate Unit is one of 29 regional educational agencies established by law in Pennsylvania in 1971. Working between the Pennsylvania State Department of Education and the local school districts, the Intermediate Unit's mission is to provide services that can be offered most economically at the regional level. CCIU's major services include: special education and compensatory education programs; career, technical and customized education; mentor training and staff development; technology initiatives; consortia for school business operations; and curriculum services. *About Us*, CHESTER COUNTY INTERMEDIATE UNIT, https://www.cciu.org/domain/19. (last visited Mar. 15, 2022).

reinstated the bus aide. Compl. at ¶ 43. Because Ball restored the bus aide, Luo believed that the hearing in connection with his due process complaint should have been mooted. Compl. at ¶ 44. Luo, however, has not alleged that he withdrew his complaint. Instead, he alleges that the School District, with Montanye as its counsel, refused to dismiss the hearing, and requested Hearing Officer Charles W. Jelley maintain the hearing on the issue of "whether an aide on the bus is necessary for the delivery of FAPE to the child" in violation of his due process rights. Compl. at ¶ 49.

At the hearing, Montanye offered the testimony of two bus drivers and a bus aide for purposes of demonstrating that a bus aide was not necessary. Compl. at ¶ 59. Luo's claims against the Attorney Defendants arise from Montanye's efforts to move forward with the hearing and seek a determination as to whether a bus aide was necessary. Compl. at ¶¶ 52-60. Luo claims that he "was forced to appear in the hearing to present a mooted issue." At the hearing, Jelley ruled in favor of the School District. Compl. at ¶ 64.

     ii.    *Decisions in Civil Action No. 14-6354, and Mr. Luo's failure to comply with Court Orders*

In filing Civil Action No. 14-6354 with the Eastern District of Pennsylvania, Luo sought review of the Hearing Officer's Decision based upon the District's refusal to carry out the terms of the IEP that recommended a residential placement for Student and legal error by the Hearing Officer ordering an IEE without Luo's consent. *Id.*, ¶ 6. Additionally, Luo alleged § 1983 claims against each defendant for violation of his Fifth and Fourteenth Amendment due process rights. *Id.*, ¶¶ 7-10. Luo requested: (1) placement of Student in a residential educational setting; (2) vacation of the Hearing Officer's Decision; and (3) an award of compensatory and punitive damages in the amount of $3 million against each defendant.

Judge Wells prepared a Report and Recommendation which Judge O'Neill approved and adopted. Luo's claims were dismissed outright, or stayed for review of the Hearing Officer's decision, and eventually dismissed for failure to state a claim upon which relief can be granted. Luo failed to present evidence that could support his § 1983 claims or that the School District acted illegally in changing Student's IEP or mandating training for Luo.

Although most of Plaintiff's claims were dismissed with prejudice, he was given the opportunity to file a second amended, consolidated complaint to address claims 2, 4, 5, and 6 for due process and "liberty rights" violations. Judge O'Neill consolidated Mr. Luo's open cases in 2016, and Plaintiff appealed that consolidation. Mr. Luo simultaneously moved to stay Civil Action No. 14-6354 in favor of pursuing his claims under another docket, argued that his cases should not be consolidated, and moved for Judge O'Neill to reconsider the approval and adoption of the Report and Recommendation. As a result, Civil Action No. 14-6354 was stayed for the pendency of his appeal, and Mr. Luo's other claims were denied. The Third Circuit Court of Appeals ultimately upheld the consolidation order.

Mr. Luo then filed a Motion to Lift the Stay, which the Court granted. The Court directed him to file a Second Amended Complaint in accordance with both Judge O'Neill's and this Court's separate consolidation orders. Plaintiff failed to submit a Second Amended Complaint, and the Defendants filed their Motions to Dismiss under consideration in this Opinion.

**B.  Facts Specific to Civil Action No. 21-1098**

In Civil Action No. 21-1098's Complaint, Plaintiff raises § 1983, 14th Amendment, abuse of process, civil conspiracy, and negligence claims against Defendants Owen J. Roberts School District, School District Counsel Sharon W. Montanye, Sweets Stevens Katz Williams LLP, Hearing Officer James Gerl ("HO Gerl"), and the Pennsylvania Dept. of Education for their

approach to Mr. Luo's Office for Dispute Resolution ("ODR") hearing requests. This Court consolidated 21-1098 with 14-6354 via Order on May 20, 2021 (ECF No. 21).

Plaintiff filed his Complaint on March 10, 2021, alleging that Defendants Ms. Montanye and HO Gerl violated due process complaint regulations for educational proceedings under 34 C.F.R. § 300.508(b) by blocking Plaintiff from two consecutive hearings, which harmed him and his child. On December 8, Luo filed a "due process complaint" with the ODR seeking a hearing to address his concerns. Compl. ¶¶ 22, 23. ODR assigned the matter to HO Gerl. Compl. ¶ 24. On December 18, 2020, School District counsel Ms. Montanye, filed a Motion to Dismiss Luo's due process complaint. That motion was granted by HO Gerl five days later on December 23, 2020. Compl. ¶ 33. HO Gerl cancelled the hearing and gave Luo a notice that he could appeal his decision. Compl. ¶ 35. Instead of appealing the decision, Luo filed a second due process complaint with ODR on December 25, 2020. Compl. ¶ 42. Again, HO Gerl was assigned to hear the matter. Compl. ¶ 43. On January 11, 2021, Montanye filed a motion on behalf of the School District seeking dismissal of Luo's newly filed due process complaint. Compl. ¶ 45. That motion was also granted by HO Gerl. Compl. ¶ 53. These hearings also make up the beginning of the allegedly tortious conduct that Plaintiff brings in his latest claim, ECF No. 21-5000.

Plaintiff has concerns as to whether the Pennsylvania Department of Education and the School District were appropriately meeting Student's educational needs, Compl. ¶ 16, and he believes he is entitled to hearings that allow him to dictate the style of Student's education as a special needs student. Compl. ¶ 40. He alleges "that the school district and Department of Education failed to establish and maintain a procedure to ensure the student to [sic] receive an appropriate education." *Id.* Plaintiff also mentions that he was sanctioned for language in his

communication and briefings, but avers that he has a right to use "colorful language" under the First and Fourteenth Amendments and thus should not have been sanctioned. Compl. ¶ 59.

Plaintiff asks this Court to: (1) vacate the hearing officer's decision in file number 24398-2021KE; (2) "grant unilateral placement" and compensatory education effective from December 8, 2020—while not specified, ostensibly, Luo still wants his child placed in the residential program of his choosing rather than the private education the school district currently provides; (3) grant a monetary award against Defendants Montanye, Sweet Stevens Katz Williams LLP, Gerl, and the Department of Education.

### C.  Facts Specific to Civil Action No. 21-5000

In his newest Complaint filed against Owen J. Roberts School District psychologist Dan O'Brien, Hearing Officer Michael J. McElligott ("HO McElligott"), and the Pennsylvania Department of Education, Plaintiff alleges that the School District failed to follow "the regulations to conduct the 2021 reevaluation" and that the hearing officers always sided with the School District, which enabled the School District to break the relevant laws. Compl. 13. His Complaint "asserts 1983 claims and [requests the Court] review[] the hearing officer's decision." *Id.*

In November 2020, the District contacted Plaintiff to conduct the biennial re-evaluation process for Student's IEP.  Plaintiff responded that he was going to provide parent input for re-evaluation in March or April of 2021.  In January 2021, Student's IEP was due for its annual revision. (Dan O'Brien and Owen J. Roberts School District Mot. to Dismiss 1). Plaintiff alleges that on April 7, 2021, he submitted a parent input for 2021 reevaluation, and the School District did not inform him how they would conduct the reevaluation. Compl. 4.

On April 29, 2021, the School District mailed the 2021 reevaluation report performed by defendant Dan O'Brien. Compl. 4. Plaintiff alleges that the IEP team failed to: (1) review existing evaluation data and parent input; and (2) provide prior written notice to describe the School District's proposed procedure before starting the reevaluation. Compl. 4. He alleges that there was no substantive difference between the evaluations, outside of the March 9, 2021 and March 11, 2021 classroom observations, for which he did not give parental consent. Compl. 4-5. Ostensibly, he bases his claim that the Reevaluation Report (RR) didn't include his input on the similarities between the report at issue here, and the previous report.

The April 2021 RR recommended that Student continue to be identified as a student with an intellectual disability and autism, which resulted in the IEP team meeting in May 2021 to discuss the IEP. In June 2021, Plaintiff filed a due process complaint with the Office for Dispute Resolution ("ODR") alleging, *inter alia*, that the District did not conduct any updated assessments as required by the April 2021 RR. The ODR assigned HO McElligott for the hearing, and the School District once again retained Ms. Montayne of Sweet Stevens Katz & Williams law firm for their counsel.

At the hearing, Plaintiff "informed the school district that if [it] admitted that it failed to comply with the regulations for the reevaluation, Plaintiff could withdraw the due process complaint notice." Compl. 6. Plaintiff believes the school district, the hearing officer, and the district's counsel have conspired against him and Student to uphold the inadequate IEP reevaluation. Compl. 10.

On August 16, 2021, HO McElligott issued his decision ("August 16, 2021 Decision") and found that the District met its obligations with respect to the April 2021 RR. However, HO McElligott ordered the District to fund a comprehensive independent re-evaluation ("IEE")

because of the confusion surrounding additional data-collection. (Dan O'Brien and Owen J. Roberts School District Mot. to Dismiss 2) Plaintiff believes HO McElligott did not have the authority to order an IEE. Compl. 10-11. Plaintiff does not cite any regulation that supports his claim; instead, he discusses 34 C.F.R. § 300.502(d).[6]

Plaintiff appealed the August 16, 2021 Decision to this Court via the filing of the civil Complaint against School Defendants, HO McElligott, and the Pennsylvania Department of Education. (Dan O'Brien and Owen J. Roberts School District Mot. to Dismiss 2). Plaintiff alleges the school district's failure to adequately evaluate his student led to the failure to develop an appropriate education hearing and "injured the student repeatedly." (Compl. 6). Plaintiff states that he "tried to keep innocent persons, e.g., the IEP team and the special school, from the mess. Therefore, the due process complaint only raised two issues… The school district failed to give a parent a prior written notice; [t]he other is the reevaluation failed to assess all areas related to parent input." (Compl. 6).

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause

---

[6]      34 C.F.R. §300.502(d) has nothing to do with a lack of authority to order an IEE and HO McElligott clearly has the authority to order an IEE with the purpose of gathering more information necessary for creating an adequate IEP

of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  If the complaint fails to do so, the motion for dismissal will be granted.

**B.  Rule 12(b)(1)**

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be raised at any time during the proceedings. Fed. R. Civ. P. 12(h)(3). These motions challenge a federal court's authority to hear the case and the party asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of litigation. *See Byrne v. Cleveland Clinic*, 684 F.Supp.2d 641, 649 (E.D. Pa. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)); *Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991); *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Motions pursuant to Rule 12(b)(1) come in two forms: (1) those that attack the Complaint on its face and (2) those that attack some factual element within the Complaint that establishes jurisdiction. *McAllister Towing and Transp. Co., Inc. v. United States*, 17 F. Supp. 3d 442, 449 (E.D. Pa. 2014) (citing *Mortensen*, 549 F.2d at 891); *Doe v. Goldstein's Deli*, 82 Fed. Appx. 773, 775 (3d Cir. 2003); *Yuksel v. Northern Am. Power Tech., Inc*., 805 F.Supp. 310, 311 (E.D. Pa. 1992). Facial attacks do not challenge the Complaint on its factual record but instead contend that the pleadings fail to present an action within the court's jurisdiction. *See, e.g., Mortensen*, 549 F.2d at 891; *Jarman v. Capital Blue Cross*, 998 F. Supp. 2d 369 (M.D. Pa. 2014). On the other hand, factual attacks call allegations in the Complaint into question and a court may weigh evidence outside of the pleadings in order to determine its power to hear the case. *See e.g., Mortensen, Jarman*.

## C.  Immunity

States—including the state's agencies or departments and state officials sued in their official capacities—are generally immune from suit. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or  her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is not different from a suit against the State itself."). The Court must operate from the baseline assumption that the State, its departments and representatives are immune from suit in an action, unless an exception to sovereign immunity applies. *Chester Upland Sch. Dist. v. Pennsylvania*, 861 F. Supp. 2d 492, 510-11 (E.D. Pa. 2012).  "Sovereign immunity is jurisdictional in nature," *Giovanni v. United States Dep't of the Navy*, 433 F. Supp. 3d 736, 742 (E.D. Pa. 2020) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).

## III.    DISCUSSION

Mr. Luo's blatant disrespect towards Defendants and the Court, and the lack of ethics and common courtesy in his filings have damaged his credibility. His thinly veiled threats on the Court and insults to everyone involved go beyond the scope of his free speech and due process rights.[7] "It is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. . .  But if the ruling is adverse, it is not counsel's right to resist or to insult the judge, his right is only respectfully to reserve his point for appeal." *Sacher v. United States*, 343 U.S. 1, 9 (1952); *see also Accord Maness v. Meyers*, 419 U.S. 449, 459 (1975), *Johnson v. Trueblood*, 476 F. Supp. 90, 95 (E.D. Pa. 1979) (reversed on other grounds). Mr. Luo is admonished not to include such scurrilous statements as detailed in footnote seven in any further filings with this Court as they will be stricken under Fed.R.Civ.P. 12(f) and he will be subject to sanctions, including the possibility of an injunction for vexatious

---

[7] Examples of Mr. Luo's vitriolic language includes:

Motion for Reconsideration (Civil Action No. 14-6354 ECF No. 84): "Judge Tucker and her law clerks should properly demonstrate they are capable of understanding the laws, not acting as idiot[sic], and should stop issuing frivolous orders against Luo… Judge Tucker is a so-called attorney, and also has law clerks. Can Judge Tucker cite a law to prove that Judge Tucker is not an idiot. Judge Tucker's chamber is bullshit;" "The court from time to time demonstrates judicial proceeding is asshole parade. We do not need to trash the court. The court trashes itself. The case 15-2952, which school district filed, is a good example for people to laugh at the court's bullshit conduct;" and "What kind of bullshit court is it? Judge and law clerks may believe no one can laugh at or criticize or public denounce them. Really? If the matter is made known to the other attorneys or the public, people may die laughing at those stupid law clerks and judges"

Response in Opposition (Civil Action No. 14-6354 ECF No. 89) "Counsel DiOrio is human trash, just lying all he can lie. Let us laugh at this stupid and shameless attorney… Counsel DiOrio should stop demonstrating he is an idiot;" and "Judge Tucker is an idiot. There is no way for Judge Tucker to consolidate the cases. Judge Tucker should vacate the consolidation order in each case, and should know what a shame is."

Complaint (Civil Action No. 21-5000 ECF No. 1): "Is this kind of garbage court deserved trust and respect? Justice delayed is justice denied. This kind of proceeding is garbage. It is a great honor that Plaintiff has presented the question to the Third Circuit multiple times, "whether bombing the court or shooting judges as shooting animals is a holy mission to counter bullshit and corrupt judicial system?" In this society, self-defense is not enough. Eventually, it is a society of self-judgment. Bomb! Bomb! Bomb! Shoot! Shoot! Shoot! Bomb! Bomb! Bomb! Shoot! Shoot! Shoot! That should happen in this land because that is nature. When there is a cause, the consequence is absolute. That is nature."

litigation. *See Walsh v. Walace*, No. 16-1722, 2016 WL 4783991, at *2 (M.D. Pa. Aug. 19, 2016), *report and recommendation adopted*, No. 16-1722, 2016 WL 4734862 (M.D. Pa. Sept. 12, 2016).

The Third Circuit "has made clear that a pattern of groundless and vexatious litigation will justify an order prohibiting further filings without permission of the court." *Chipps v. U.S.D.C. for the M.D. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989) (citing *Gagliardi v. McWilliams*, 834 F.2d 81 (3d Cir. 1987); *In re Oliver*, 682 F.2d 443 (3d Cir. 1982)). While a Court's order limiting future filing should be narrowly applicable to only those matters, "a district court has authority to require court permission for all subsequent filings once a pattern of vexatious litigation transcends a particular dispute." *Id; see also Banks v. Pope Francis*, No. 15-1400, 2015 U.S. Dist. LEXIS 164577, at *10-11 (W.D. Pa. Dec. 8, 2015). Here, Mr. Luo's filings have indeed transcended a particular dispute, as he consistently files motions and suits related to the myriad of perceived wrongs he feels he has endured. Mr. Luo is hereby noticed that continuing to make vexatious filings, insult the Defendants, or insult the Court will result in an injunction.

## A. Defendants' Motions to Dismiss in Civil Action No. 14-6354

Plaintiff was directed, via February 9, 2021 Court Order, to consolidate his claims with a Second Amended Complaint in order for litigation to proceed. He did not do this. Instead, he filed Motions to Strike the Defendants' Motions to Dismiss and a Motion for Default Judgment.

Plaintiff alleges his failure to file a consolidated Amended Complaint as directed is in part due to this Court's failure to rule in his favor on his previous motions for default judgment. He makes no new arguments and presents no new information. Unfortunately, Plaintiff does not seem to understand that because he failed to comply with Judge O'Neil's ruling, he prevented the

matter from moving forward, and chose to file new actions since he did not achieve his desired result.

   *i.   Standards for the recurring legal issues in Plaintiff's claims*

  "Abuse of process is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Cruz v. Princeton Ins. Co.*, 2007 PA Super 152, ¶ 8, 925 A.2d 853, 856 (2007) (quoting *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 192 (1993)). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Id.* "Under Pennsylvania law, the tort of abuse of process is concerned with abusing judicial proceedings after they have been initiated." *Giant Food Stores v. Kmart Corp.*, No. 94-6817, 1996 WL 469670, at *2 (E.D. Pa. Aug. 14, 1996).

  "In order to state a cause of action for abuse of process, it is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive." *Cruz v. Princeton Ins. Co.*, 71 Pa. D. & C.4th 256, 261 (Phila. Ct. Com. Pl. 2005) (citing *Rosen v. Tesoro Petroleum Corp.*, 399 Pa. Super. 226, 582 A.2d 27 (1990), *allocatur* denied, 527 Pa. 636, 592 A.2d 1303 (1991)). "There must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Cruz*, 71 Pa. D. & C.4th 256, 261 (Phila. Ct. Com. Pl. 2005). "The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an

incidental motive of spite or ulterior purpose of benefit to the defendant." *Rosen v. Tabby*, No. 95-2968, 1997 WL 667147, at *8 (E.D. Pa. Oct. 9, 1997), *aff'd*, 175 F.3d 1011 (3d Cir. 1999) (citing *Rosen v. American Bank of Rolla*, 627 A.2d at 192 (Pa. Super. 1993)). "Filing a complaint in the hopes that it will induce settlement negotiations does not constitute an abuse of process." *Holst v. Oxman*, No. 05-0220, 2006 WL 724520, at *7 (E.D. Pa. Mar. 17, 2006), *aff'd*, 290 F. App'x 508 (3d Cir. 2008).

To prevail in an action for wrongful use of civil proceedings pursuant to the Dragonetti Act, a plaintiff must demonstrate the following elements:

> (a) Elements of action.--A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>> (2) the proceedings have terminated in favor of the person against whom they are brought.
> (b) Arrest or seizure of person or property not required.--The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought.

42 Pa. C.S. §8351.

"Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with malicious motive and lacking probable cause." *Mi-Lor, Inc. v. DiPentino*, 439 Pa. Super. 636, 639, 654 A.2d 1156, 1157 (1995). There can be no Dragonetti liability for merely defending an underlying matter. As held by the Pennsylvania Superior Court, "[w]e observe, however, that an action for the wrongful use of a counterclaim demands that courts examine such claims closely, lest a defendant be punished for nothing more than defending himself or herself against a claim made by another." *Mi-Lor, Inc.*, 654 A.2d at 1158; *see also Young v. Sheddy*, 35 Pa. D. &

17

C.3d 78, 82–83 (Pa. Com. Pl. 1984) ("This statutory cause of action never encompassed the defense of an action." It is very difficult to prevail on a claim under the Dragonetti act because "a party seeking redress under Dragonetti bears a heavy burden." *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 394 (3d Cir. Pa. 2002).

ii.     *Defendant James Gerl's Motion to Dismiss*

Plaintiff raises abuse of process and civil conspiracy claims against Defendant James Gerl. Mr. Gerl has absolute immunity as a Special Education Hearing Officer, and further, Plaintiff fails to allege any facts supporting his abuse of process claims. Accordingly, Plaintiff's claims must be dismissed.

As far as Mr. Gerl's immunity, "[q]uasi-judicial absolute immunity attaches to public officials whose roles are 'functionally comparable to that of a Judge.'" *Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (citations omitted). "Regardless of his job title, if a state official must walk, talk, and act like a Judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking and acting as judges who enjoy the title and other formal indicia of office." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) (citation omitted). Thus, Mr. Gerl, who functions as a judge during hearings is absolutely immune from liability with respect to any act performed within his capacity as a Hearing Officer. *See McElveen v. Canino*, 1995 WL 684063, at *1 (E.D. Pa. Nov. 17, 1995) (prison hearing examiner immune from liability arising from prisoner's disagreement with her determinations).

If Plaintiff believed that Defendant Gerl made an error, it was Plaintiff's right to appeal his rulings. Plaintiff failed to appeal any of Defendant Gerl's rulings and, instead, filed this lawsuit against him in an attempt to get the same relief that should have been raised in an appeal.

Since Plaintiff's claims and factual allegations against Defendant Gerl fall solely within the confines of his role as a hearing officer, Defendant Gerl is provided immunity as to all claims. However, even if this Court were to find that claims for Abuse of Process cannot be subject to immunity, Plaintiff has failed to allege any facts supporting a claim for Abuse of Process.

Plaintiff has not alleged any facts that would indicate Defendant Gerl acted outside the scope of a hearing officer. There is also no evidence of any bad or malicious intent, or any use of process by Defendant Gerl (or anyone else) outside of the intended purpose. While Plaintiff does generally claim that Defendant Gerl used the hearing for a purpose for which it was not designed, Plaintiff also states that there were no hearings, claiming that the hearings were cancelled. Compl. ¶¶34-35, 105-107. Since there were no hearings, there could be no abuse of process attached at any alleged hearing as claimed by Plaintiff, and dismissal of all Plaintiff's claims against Mr. Gerl is appropriate.

   iii.   *Attorney Defendants Sharon Montayne and Sweet Steven Katz Williams, LLP's Motion to Dismiss*

Luo asserted claims against the Attorney Defendants in connection with legal services they provided to the School District surrounding the special education services they provided to Luo's son. Luo claims that the Attorney Defendants are liable for abuse of process (Claim 6), and for malicious prosecution (wrongful use of civil proceedings) under the Dragonetti Act (Claim 9). Luo's claims are alleged to arise from two separate "instances:" (1) defendants improperly terminated a bus aide that was assigned to Student's bus; and (2) the School District improperly denied him access to information regarding Student's education. (Compl. at ¶ 5.) Luo does not impute any conduct to the Attorney Defendants with respect to the "second instance." The facts, as alleged by Luo, are insufficient to demonstrate a viable claim for either abuse of

process or wrongful use of civil proceedings; accordingly, his claims against the Attorney Defendants must be dismissed.

> a.  *Plaintiff's abuse of process claims*

Luo claims that: (1) there was a written agreement by which the School District would provide a bus aide in connection with Student's transportation needs (Compl. at ¶ 21); (2) Defendant Geoffrey Ball, the supervisor of special education for the School District, terminated the bus aide in the week of June 15, 2015, and refused to reinstate the bus aide when Luo demanded that he do so in July 2015 (Compl. at ¶¶ 23 – 25), which forced Luo to file a due process complaint notice on November 23, 2015. (Compl. at ¶ 38); and (3) his due process complaint was based on the School District's alleged breach of the "bus aide agreement," and his contention that the bus aide was required as a "provision of a free appropriate public education" (Compl. at ¶ 40).

Luo has failed to allege facts reflecting any conduct undertaken by the Attorney Defendants for a purpose other than that for which the process was designed. He has not pled facts to suggest that the Attorney Defendants had an illegitimate aim such as extortion, blackmail, or to coerce or compel him to take some collateral action. He has not identified an incidental motive of spite or ulterior purpose of benefit to the Attorney Defendants. In his Complaint, Luo alleges that Montanye pursued the first hearing in order to get a ruling on the "collateral issue" of whether Luo's son is entitled to a bus aide. That issue was decided in the School District's favor.

That fact alone reflects that it was not a "collateral issue" or "collateral action."

Moreover, Luo acknowledges that he sought the hearing in order to compel the School District to reinstate the bus aide. Luo claimed that a bus aide was required as part of an

agreement between him and the School District, and that a bus aide was required as part of the School District's provision of FAPE to Student. Compl. at ¶ 40. Although the School District reinstated the bus aide before the hearing was held, such an action did not resolve the issue of whether the District was required to provide a bus aide. Luo does not allege that he withdrew his complaint. Montanye's efforts to seek a ruling on the issue before the Hearing Officer cannot be deemed to have been "collateral" to the relief sought by Luo simply because the School District had already reinstated the bus aide. Accordingly, Luo's abuse of process claim is dismissed with prejudice.

### b. *Plaintiff's wrongful use of civil proceedings claims*

Initially, this Court recognizes that Luo's instant wrongful use of civil proceedings claim allegedly arises from an action he commenced. Montanye merely defended that action to its conclusion on behalf of her client. Luo has not alleged that he withdrew his cause of action prior to the Hearing Officer's ruling. Pursuant to *Mi-lor, Inc.* and *Young*, the defense of an underlying claim cannot give rise to Dragonetti liability. Subsection (a)(2) of the Dragonetti Act also reflects that the defense of an action cannot give rise to a viable Dragonetti claim as it provides for liability only if the underlying proceeding "terminated in favor of the person against whom they are brought." This means that the Act only applies if a defendant prevails in the underlying action. Further, although Luo repeatedly offers the legal conclusion that the Attorney Defendants lacked probable cause, he has not alleged facts reflecting an absence of probable cause. Indeed, Luo admits that Montanye offered testimony given by two bus drivers and the bus aide in support of the School District's contention that a bus aide was not required.

Because Luo did not prevail in the underlying matter, his wrongful use of civil proceedings claim is not viable. Accordingly, Luo's wrongful use of civil proceedings claim should be dismissed with prejudice.

Lastly, the damages Luo seeks are improper and accordingly are stricken. *Logan v. Salem Baptist Church of Jenkintown*, No. 10- 014, 2010 WL 3155261, at *9 (E.D. Pa. July 30, 2010).

    iv.    *Defendant Keri Kolbay's Motion to Dismiss*

Ms. Kolbay played no role in any actions or inactions associated with the two questions the Plaintiff asks this Court to review: (1) whether the School District could refuse to carry out an existing IEP; (2) whether it is an error of law for the Hearing Officer to, *sua sponte*, order an IEE. Amended Compl. ¶ 6. Plaintiff's claims against Ms. Keri Kolbay arise from the evaluation of Student the School District hired her to complete. However, Ms. Kolbay is an employee of the Chester County Intermediate Unit ("CCUI"), which the School District hired to conduct Student's evaluation.  Plaintiff claims that Ms. Kolbay is liable under 42 U.S.C. § 1983, and that she violated his due process and privacy rights. However, Ms. Kolbay did not make any educational decisions regarding the Student, his placement, parent training suggestions, or the Hearing Officer's independent educational evaluation ("IEE") decision.

Importantly, Ms. Kolbay was not a defendant in Plaintiff's original Complaint. She was only added, without Court approval, when Plaintiff filed his Amended Complaint on or about December 30, 2014. As the Western District determined in *Banks v. Cnty. of Allegheny*, No. 05-781, 2007 WL 4192199, at *2 (W.D. Pa. Nov. 25, 2007), adding parties, without leave of court when amending a complaint, is not proper, and grounds for dismissal. "When a plaintiff seeks to add new parties, the requirements of Fed. R. Civ. P. 20 [regarding permissive joinder of parties], must be met." *Tsosie v. Holt*, No. 10-0255, 2010 WL 2998558, at *1 (M.D. Pa. July 26, 2010).

Plaintiff has not even attempted to meet the requirements of Rule 20 in this case; he simply added Kolbay as a defendant when he filed his Amended Complaint. Thus, this Court will dismiss his complaint against Kolby for this reason. However, even if the Court were to address his claims on the merits, they would all still fail, as detailed below.

  a. *Plaintiff's § 1983 claim*

Plaintiff contends that Keri Kolbay is liable under 42 U.S.C. § 1983 without asserting any of the essential elements of a § 1983 claim. The threshold issue presented by any § 1983 case is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution. *Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training Institute*, 318 F.3d 473, 476 (3d Cir. 2003). It is the plaintiff's burden to "identify the exact contours of the underlying right said to have been violated." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

The requirements of *Monell v. Dep't of Social Services of the City of New York*, 436 U.S., 658, 690 (1978), are clear: to establish § 1983 liability against a municipal body, a plaintiff must show that (1) the enforcement of a municipal policy was (2) "the moving force" of the violation of plaintiff's federally protected rights. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Typically, plaintiffs assert that their constitutional rights were violated as a result of a policy, practice or custom of the municipality.

However, in this case, Plaintiff has not even satisfied this element. He failed to make a single allegation about any of the School District's policies, practices, or customs. He does not allege that Keri Kolbay was a policymaker or that she acted pursuant to some policy, practice or custom when she allegedly violated Plaintiff's constitutional rights. Without clearly alleging

23

these facts, Plaintiff's claims must fail, and accordingly his § 1983 claims against Ms. Kolbay are dismissed.

### b. *Plaintiff's due process claim*

In Count 6 and possibly Count 7 of his Amended Complaint, Plaintiff attempts to assert a Due Process Claim against Kolbay. It is unclear whether he is asserting a procedural due process claim, a substantive due process claim, or both, but regardless, his claims fail to meet the *Twombly* standard. *Twombly*, 550 U.S. at, 555. Plaintiff failed to establish either that: (1) a person acting under color of state law deprived him or her of a protected property or liberty interest; and (2) the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Bello v. Walker*, 840 F.2d 1124 (3d Cir.1988); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3d Cir.1991).

Kolbay had no knowledge of Plaintiff's appeal or the alleged "automatic stay;" she simply received the student's records, reviewed them, and wrote a report. Amended Compl. ¶¶ 89-94; 153-157. She is not a state actor who allegedly deprived Plaintiff of his liberty and/or property interest. Further, in this case, it is difficult to discern what substantive due process claim Plaintiff is attempting to assert, but even those which would make the most sense here— interference with familial association and right to privacy—the allegations just do not support any possible liability for Keri Kolbay as nothing comes close to shocking the conscience. Accordingly, Plaintiff's due process claims are dismissed.

### c. *Plaintiff's right to privacy claim*

Plaintiff does not have a viable right to privacy claim under the disclosure of personal information theory because the only information allegedly revealed was information about Student—Student's educational records were disclosed by the School District to Kolbay.

24

Amended Compl. ¶¶ 147-151. This claim cannot survive against Keri Kolbay because she did not disclose Plaintiff's son's educational records; she merely received and reviewed them. Amended Compl. ¶¶ 89- 90, 93, 147-151, 161-165. There is nothing in the law which even suggests that someone in Kolbay's position has any liability. Accordingly, Plaintiff's right to privacy claims are dismissed.

        *v.*      *Defendants Geoffrey Ball and Owen J. Roberts School District's Motion to Dismiss*

In his claims against Defendants Geoffrey Ball and Owen J. Roberts School District, Plaintiff repetitively raises the same few issues multiple times, alleging that his substantive, procedural, or liberty and property rights were violated by the termination of the personal bus aide for Student and the subsequent hearing, and that the bus-aide-necessity hearing itself was malicious prosecution.[8] Every single claim lacks the necessary facts to survive a motion to dismiss.

As to whether the School District committed malicious prosecution through the bus-aide-necessity hearing, Luo does not have a right to moot an administrative complaint, and certainly not the other party's administrative complaint. *See* 20 U.S.C. § 1415. Additionally, federal law

---

[8]      Mr. Luo claims: (1) his right to substantive due process was violated by the removal of the bus aide, (2) his right to procedural due process was violated when the School District refused to move an IEP hearing, (3) his liberty and property rights to the bus aide were violated, (4) the School District committed malicious prosecution when the Hearing Officer failed to moot the administrative complaint after the bus aide was restored, and proceeded to hear the School District's case as to whether an aide was needed on the bus, (5) his right to due process was violated when the Hearing Officer heard the issue of whether an aide was necessary, (6) his procedural due process rights were violated by the Hearing Officer hearing the issue as to whether an aide was necessary, (7) his liberty right to choose the date of an IEP meeting was violated when an evaluator appeared by telephone, (8) his liberty right to determine whether the evaluator should have been permitted to appear by phone was violated, (9) his liberty right was violated when the School District falsely claimed he had agreed to change the date of the IEP meeting, (10) his liberty rights were violated when his submission to the new IEP was put in the "Parents' Comments" section, but not adopted in the substance of the IEP, (11) his procedural due process right was violated when he was given 30 days until the new IEP would be implemented, even though this was within a 90-day period within which he could decide whether to appeal the Hearing Officer's decision to court, and (12) his procedural due process right was violated when the District instructed that Luo's IEP input be restricted to the "Parents' Comment" section of the IEP.

requires the hearing officer to hear claims brought by any party concerning, the provision of a FAPE under the IDEA. 20 U.S.C. § 1415. The hearing officer has no authority to choose what administrative complaint to consider, and the hearing was an appropriate use of civil proceedings.

Luo had no substantive due process right regarding a bus aide; the decision as to whether a child needs a bus aide depends on educational judgment, *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017), and can be disputed using the IDEA's procedural safeguards. 20 U.S.C. § 1415. However, IDEA decisions concerning provision of a FAPE are not actionable via § 1983. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 806 (3d Cir. 2007). The IDEA details parent and participant rights, along with federal and state implementing regulations, 34 C.F.R. Part 300, and 22 Pa. Code Chap. 14. Those sources do not provide such a right, and Luo has no right to determine when an administrative due process hearing is convened.

Accordingly, no process is due to Luo, from the School District, when the School District agrees or disagrees to a request to reschedule a hearing. Further, Plaintiff never cured the defects that led to Judge O'Neill's initial dismissal of his claims,[9] and failed to file the consolidated amended complaints that both Judge O'Neill and this Court ordered him to do. Accordingly, Plaintiff's claims against Defendants Geoffrey Ball and Owen J. Roberts School District are dismissed.

Defendants did not violate Mr. Luo's procedural due process rights when they specifically provided him a 30-days-notice before the District implemented the Student's new IEP. Plaintiff does not have a procedural right to notice of the School District's proposed action,

---

[9] Notably, the Third Circuit affirmed Judge O'Neill's dismissal.

26

20 U.S.C. § 1415(b)(3) and (c), or the right to challenge any proposed action limited in time only by the statute of limitations, 20 U.S.C. § 1415(f)(3)(C).

While the IDEA provides a 90-day period to appeal a final administrative decision, 20 U.S.C. § 1415(i)(2)(B), unless state law provides a different time, 20 U.S.C. § 1415(i)(2)(B), e.g., 30 days to appeal to Commonwealth Court, no procedure exists that ties implementation of an IEP to the appeal timeline. Indeed, Pennsylvania provides a rule stating that the local educational agency will implement a proposed IEP after 10 days unless parents take action to initiate procedural safeguards (this is stated on the signature page of the NOREP form3). In this regard, the School District provided Luo with three times the amount of time normally provided. The Defendants did not violate any of Mr. Luo's rights, and accordingly, the claims against them must be dismissed.

**B.  Defendants' Motions to Dismiss in Civil Action No. 21-1098**

First, Plaintiff raises claims against: (1) Defendants Montanye and her employer, Sweet Stevens Katz Williams LLP, for failing to carry out the appropriate standard of care in adjudicating his Office of Dispute Resolution claim and harming him; and (2) Defendant Gerl for allowing Montanye to harm him by granting the motion to dismiss his ODR claim. He raises tangential claims against the Department of Education for allowing this to happen. Plaintiff's second claim for negligence is against Defendant Montanye for violating her common law duty of care for Plaintiff by filing a motion to dismiss his ODR claim in the first place. Plaintiff's third claim against Montanye is for common law abuse of process at Student's first hearing—he claims that they used the dispute resolution hearing for a different purpose than its design, and he lost his due process interest at the hearing on his child's education.

Plaintiff's fourth claim is for abuse of process under § 1983 in his first ODR hearing—though he puts forth no evidence to support this claim. Plaintiff's fifth, sixth, seventh, and eighth claims are for abuse of process under the common law and under §1983, for the School District for filing a motion to dismiss his hearing. Plaintiff alleges this violated his due process rights against all the defendants. Plaintiff's seventh claim also mentions that he should not have been sanctioned for his language—as noted above, Plaintiff makes a point to use vulgar and demeaning language in addressing the Defendants and this Court. Plaintiff raises ten more claims that raise the same issues repeatedly but under new headings for procedural due process, liberty rights, and a conspiracy against him.

In their separate motions, the Defendants seek dismissal of these claims. As further expounded upon below, this Court finds for the Defendants and grants these motions.

     *i.*      *Attorney Defendants Sharon Montayne and Sweet Steven Katz Williams, LLP Motion to Dismiss*

Each of Luo's claims arise from Montanye filing successful motions to dismiss of two of Luo's due process complaints filed with the Office for Dispute Resolution.  The Attorney Defendants aver that this Court should dismiss Luo's negligence claims (Claims 1 and 2) because there was no attorney-client relationship between the Attorney Defendants and Luo—their position was to represent the school district. Further, Luo has failed to allege facts reflecting that any conduct of the Attorney Defendants that was undertaken for a purpose other than that for which the process was designed. In the dispute resolution process the School District follows, the attorneys followed protocol and sought an end to the proceedings in accordance with all District policies. Plaintiff being unhappy with the outcome does not mean that the Attorney Defendants acted illegally.

28

In Claims 4 and 6, Luo appears to argue that the Attorney Defendants' abuse of process violated his right to procedural due process under § 1983. The Attorney Defendants cannot be deemed to have violated Luo's procedural due process rights in connection with their representation of the School District in the underlying matters. "Under Pennsylvania law, the tort of abuse of process is concerned with abusing judicial proceedings after they have been initiated." *Giant Food Stores v. Kmart Corp.*, *Giant Food Stores v. Kmart Corp.*, No 94-6817, 1996 WL 469670, at *2 (E.D. Pa. Aug. 14, 1996). "The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.*

As attorneys for the School District, Defendants cannot be held liable to Luo because they are protected under the doctrine of qualified immunity. Separately, Montanye and her firm cannot be held liable for civil rights claims because they cannot be deemed to have acted under color of state law. In *Andrekovich v. PennPrime Liab. Trust*, No. 12-195, 2013 WL 808843, at *9 (W.D. Pa. Mar. 5, 2013), the court dismissed § 1983 claims brought against a municipality's attorneys. The court held the attorneys did not act in their sole interests, concluding that under such circumstances, they cannot be deemed persons acting under color of state law. This rationale also applies to Plaintiff's Claims 9-10 for "liberty rights." The Attorney Defendants cannot be deemed to have violated Luo's liberty interest in making decisions concerning his child because they cannot be deemed to have been acting under color of state law. Luo raises no

cognizable claims against the Attorney Defendants, and accordingly, their motion to dismiss must be granted.

ii.    *Defendant Owen J. Robert's School District Motion to Dismiss*

Claim 11 for "Liberty Right" is the only claim directed at the School District. Here, Luo objects to preprinted language in the NOREP. This language simply informs a parent that, if no due process procedure is sought, the proposed action set forth in the NOREP will go forward. Luo believes that a parent has the constitutional right to prevent a school district's proposed actions under the IDEA by neither accepting the proposed actions nor contesting them. This is not the case.

Luo's claim that his substantive due process rights were violated by his inability to nullify a NOREP unilaterally is facially meritless. He does not have unlimited authority to dictate the school's policy, and cannot prevent lawful school district actions that are taken in compliance with the IDEA to provide adequate education for special needs students. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005) (parent's substantive due process right to make educational decisions for a child are limited.); *see also Brown v. Hot, Sexy & Safer Products, Inc.*, 68 F.3d 525, 533-4 (1st Cir. 1995); *see also Doan v. Downingtown Area Sch. Dist.*, Civ. A.19-959, 2020 WL 4699046 at *3 (E.D. Pa. Aug. 13, 2020). Luo fails to allege sufficient facts that the School District violated his liberty interest in his child's education to survive a motion to dismiss, and accordingly, his claims are dismissed.

iii.    *Defendant Pennsylvania Department of Education Motion to Dismiss:*

Defendant Pennsylvania Department of Education ("PDE") moves to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) because: (1) PDE is not a "person" subject to suit under § 1983; (2) The Eleventh Amendment precludes Plaintiff's § 1983

claims against PDE; (3) § 1983 cannot be used to vindicate alleged violations of the Individuals with Disabilities Education Act; and (4) State sovereign immunity bars Plaintiff's negligence claims against PDE. This Court agrees and finds that Mr. Luo fails to raise a colorable claim. Accordingly, the claims against Defendant PDE are dismissed.

PDE is not a "person" subject to suit under § 1983. § 1983 claims cannot be brought against state agencies, since states are not considered "persons" under that statute. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 70-71 (1989). PDE is a state agency and therefore cannot be sued under § 1983. *See O.F. v. Chester Upland Sch. Dist.*, No. 00-779, 2000 WL 572708, at *2 (E.D. Pa. May 10, 2000) ("It is clear that the PDE, as a state agency, is not a person [under § 1983].")

Additionally, the Eleventh Amendment precludes Plaintiff's § 1983 claims against PDE, because it immunizes states and their agencies from suit in the federal courts. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *see also Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). The Eleventh Amendment "deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). Eleventh Amendment immunity can be overcome only when a state consents to being sued or Congress specifically abrogates this immunity pursuant to a valid exercise of power. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000). The Commonwealth of Pennsylvania has explicitly withheld its consent to suit in federal court. 42 Pa.C.S. § 8521(b). Furthermore, "[s]ince Congress expressed no intention of disturbing the states' sovereign immunity in enacting § 1983, these suits, when brought against a state, are barred by the Eleventh Amendment." *Blanciak,* 77 F.3d at 697 (citing *Will,* 491 U.S. 58, *Quern v. Jordan*, 440 U.S. 332, 339-46

(1979)). PDE is a state entity protected by Eleventh Amendment immunity. Accordingly, Plaintiff's claims against it must be dismissed.

Section 1983 cannot be used to vindicate alleged violations of the Individuals with Disabilities Education Act. Plaintiff's claims pertain to his dissatisfaction with administrative proceedings designed to comply with the Individuals with Disabilities Education Act (IDEA). As the Third Circuit has held, a § 1983 action cannot be used to enforce rights guaranteed by the IDEA. *A.W. v. Jersey City Pub. Schools*, 486 F.3d 791, 803 (3d Cir. 2007); *Aidan S. by & Through Winterbottom v. Fafalios*, No. 19-256, 2020 WL 821880, at *2 (E.D. Pa. Feb. 18, 2020) ("Because of IDEA's comprehensive remedial scheme, § 1983 cannot be used as a vehicle for IDEA claims.") (citing *A.W.*).

State sovereign immunity bars Plaintiff's negligence claims against PDE and its employees acting within the scope of their duties, except where the legislature provides otherwise. *See* 1 Pa.C.S. § 2310, and 42 Pa. C.S. §§ 8501, 8521-22. None of the categories where the Commonwealth has waived its sovereign immunity with respect to negligence claims apply to the negligence claims Plaintiff asserts against PDE here. *See Hara v. Pennsylvania Dep't of Educ.*, No. 09-1014, 2010 WL 339859, at *5 (M.D. Pa. Jan. 22, 2010) (dismissing state law claims against PDE due to sovereign immunity) (citing *Grigsby v. Kane*, 250 F.Supp.2d 453, 457 (M.D. Pa.2003))

### C.  Defendants' Motions to Dismiss in Civil Action No. 21-5000

In his latest civil action, Plaintiff rehashes the same claims (which have been defunct since 2016). Here, he seeks for the Court to: (1) vacate the hearing officer's decision in file number 25004-2021AS and strike the reevaluation report of the student; (2) grant unilateral placement and compensatory education for the student; and (3) grant him a monetary award

against Defendants Owen J. Roberts School District, and the Department of Education. (Compl. ¶ 84).

      *i.*      *Defendants Dan O'Brien and Owen J. Roberts School District*

      Defendants Dan O'Brien and Owen J. Roberts School District raise two arguments in their Motion to Dismiss: (1) Plaintiff has no claim under the IDEA or § 1983, and (2) Defendant Dan O'Brien is entitled to qualified immunity and the claims against him must be dismissed.

      *a.*  *IDEA*

      Under the IDEA, there is a grievance process where parties can bring a civil action complaint in a District Court when they have a problem with the outcome of the due process hearing for IDEA compliance. A procedural violation does not constitute the denial of a FAPE unless the procedural inadequacy: "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). This did not happen here. A procedural violation alone does not suffice to support a compensatory education award. See 20 U.S.C. § 1415(f)(3)(E)(ii). *See also*, *e.g.*, *C.M. v. Board of Educ. of Union County Reg'l High Sch. Dist.*, 128 Fed. App' x. 876, 881 (3d Cir. 2005). Plaintiff was awarded a comprehensive independent re-evaluation at cost to the District as a result of his due process complaint. He was able to select which independent examiner would evaluate the claims out of three options. This awarded him substantial input, so the August 16, 2021 decision, that included the IEE, mooted his claims.

    *b.  § 1983*

The Third Circuit stated, "there is no recognized right for parents to educate their children 'unfettered by reasonable government regulation'." *Combs v. Homer-Center School District*, 540 F.3d 231, 249 (3d Cir. 2008) (citing *Runyon v. McCrary*, 427 U.S. 160, 178 (1976)). "Parents do not have a constitutional right to avoid reasonable state regulation of their children's education." *Id.*  Plaintiff was involved in the re-evaluation process and, therefore, he had constructive notice at a minimum. The District was not substantially interfering with Plaintiff's upbringing of Student as a matter of law. They were attempting to conduct the biennial re-evaluation process of Student who had been eligible for special education for several years and identified as such by the District.

Defendant Dan O'Brien is entitled to qualified immunity from the § 1983 claims asserted against him. Plaintiff's complaint does not properly show that a constitutional right was violated, and there is no law establishing that observing a child in a classroom for purposes of a reevaluation report is impermissible as alleged here with respect to Defendant O'Brien. Defendant O'Brien should be dismissed from this action with prejudice.

    ii.    *Defendant Pennsylvania Department of Education*

Defendant Pennsylvania Department of Education raises two major arguments in its Motion to Dismiss: (1) PDE is not a "person" subject to suit under § 1983, and (2) pursuant to the Eleventh Amendment, this Court lacks jurisdiction over Plaintiff's § 1983 claims against PDE.

    *a.  The PDE is not a "person" under § 1983*

As addressed above, the PDE is not a person, and § 1983 claims cannot be brought against state agencies. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 70-71

(1989). PDE is a state agency and therefore cannot be sued under § 1983. *See O.F. v. Chester Upland Sch. Dist.*, No. 00-779, 2000 WL 572708, at *2 (E.D. Pa. May 10, 2000) ("It is clear that the PDE, as a state agency, is not a person [under § 1983].")

> b.  *Eleventh Amendment*

The Eleventh Amendment immunizes states and their agencies from suit in the federal courts. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). Eleventh Amendment immunity can be overcome only when a state consents to being sued or Congress specifically abrogates this immunity pursuant to a valid exercise of power. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000). Pennsylvania has explicitly withheld its consent to suit in federal court. 42 Pa.C.S. § 8521(b). Accordingly, Plaintiff's Eleventh Amendment claims are barred and must be denied.

## IV.   CONCLUSION

Given the Plaintiff's failure to raise any claims upon which relief can be granted in his three related actions, the following Motions to Dismiss are granted: (Civil Action No. 14\6354 (ECF Nos. 87, 88, 91, 95)), (Civil Action No. 21-1098 (ECF Nos. 5, 11, 17)), (Civil Action No. 21-5000 (ECF Nos. 7, 11, 14)). An appropriate order follows.